(72 Misc. Rep. 289.)

## In re COMPTON'S WILL.

### (Surrogate's Court, Rockland County. May, 1911.)

1. CHARITIES (§ 20*)—CHARITABLE BEQUEST—VALIDITY.

    A bequest to an unincorporated benevolent association for its own use, and not in trust for another, is invalid.

    [Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 18–33; Dec. Dig. § 20.*]

2. CHARITIES (§ 22*)—CHARITABLE BEQUEST—INDEFINITENESS.

    A bequest to an individual to be used "for the Lord's work" does not sufficiently indicate the charitable purpose to authorize the Supreme Court to administer the trust.

    [Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 51–56; Dec. Dig. § 22.*]

3. WILLS (§ 467*)—"DESIRE"—CONSTRUCTION OF TERM.

    The words "I desire," as used in a will, are equivalent in meaning to the words "I direct," and should be so interpreted.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 954, 986; Dec. Dig. § 467.*

    For other definitions, see Words and Phrases, vol. 3, pp. 2028–2030; vol. 8, pp. 7635, 7636.]

Proceedings for the probate of the will and codicil of Ella A. Compton. Probate granted on conditions.

Benjamin Levison (Wells & Snedeker, of counsel), for proponent.
Wallace B. Lydecker (Frank P. Comesky, of counsel), for contestants.

McCAULEY, S.  The contestants concede that the evidence submitted by the proponent, which is not contradicted, establishes the due execution of the will and codicil, and the competency of the testatrix to execute the same. They must, therefore, be admitted to probate, as already announced.

The contestants have, however, expressly put in issue, under the provisions of section 2624 of the Code of Civil Procedure, the validity, construction, and effect of the fourth and fifth clauses of the will, and the second clause of the codicil, and these questions are yet to be determined. By the fourth and fifth clauses of the will a legacy of $500 and certain household furniture and other personal property are bequeathed to Berachah Home; and this bequest is said to be invalid for the reason that the legatee is an unincorporated voluntary association, and therefore incapable of taking a bequest. It was conceded by counsel upon the submission of the case that Berachah Home is an unincorporated association. The bequests are absolute in terms and without qualification; and the uses to which the property is to be applied are not stated.

[1] An unincorporated voluntary association or society has no legal entity; and it has accordingly been uniformly held in this state that such an association or society is incapable of taking a direct bequest to it. White v. Howard, 46 N. Y. 144; Sherwood v. American Bible Society, 40* N. Y. 561; Fairchild v. Edson, 154 N. Y. 199, 48

N. E. 541, 61 Am. St. Rep. 609; Murray v. Miller, 178 N. Y. 316, 70 N. E. 870; Mount v. Tuttle, 183 N. Y. 358, 367, 76 N. E. 873, 2 L. R. A. (N. S.) 428; Fralick v. Lyford, 107 App. Div. 543, 95 N. Y. Supp. 433. The bequests cannot, therefore, be upheld as direct gifts. Nor can they be sustained under chapter 701 of the Laws of 1893, as amended by chapter 291 of the Laws of 1901. It is probable that Berachah Home was organized and is now maintained for religious, educational, charitable, or benevolent purposes; but of this neither the will nor the record before me furnishes any proof. If, however, we assume that it was organized for any or all such purposes, nevertheless, as it seems to me, the bequests under consideration must be held to be invalid.

The statute was intended to regulate gifts for religious, educational, charitable, and benevolent purposes; but it clearly relates only to gifts in trust for such purposes. Fralick v. Lyford, supra. The bequests under consideration are not expressed to be in trust, but are given directly and absolutely to Berachah Home. Moreover, the statute nowhere assumes to give an unincorporated association power to take or hold such a gift, either absolutely or as a trustee. This brings us to a consideration of the second clause of the codicil, which is in these words:

"Second. I desire that the sum of $1800. (eighteen hundred dollars) invested in the Lord's work in care of Miss S. A. Lindenberger (of which I receive the income during my lifetime), shall not be withdrawn from said work at my decease, but shall wholly remain in that work. I make this arrangement, not because my affection to my relatives has lessened; but because of the importance of the Lord's work, and believing that it ought not suffer embarrassment; and, also, I believe it to be His leading."

How shall this clause be interpreted? The basic rule in the interpretation of wills is that the intention of the testator must be sought for and derived from the instrument itself, and carried out, provided it infringes no established rule of law, statutory or otherwise. And the will should be so construed as to uphold and effectuate the testator's intention, if that can be done.

In Weeks v. Cornwell, 104 N. Y. 325, at page 336, 10 N. E. 431, at page 433, the court say:

"So, in the construction of written instruments, courts will scrutinize the language used, and, however confused, uncertain, and involved it may be, will give it that construction which has in its favor the balance of reasons and probabilities, and will act upon that. The intent of a testator may sometimes be missed, but such is the infirmity of language and human judgment that such a result is sometimes unavoidable."

Courts are not, however, confined to the will itself, if there are ambiguities in it of such a character that the testator's intent cannot be absolutely ascertained from the langauge used, but may consider the circumstances which existed at the time of the making of the will. Thus it has been held in such a case that evidence is admissible to show the condition of the testator's family and estate and the circumstances by which he was surrounded at the time of making his will. Patch v. White, 117 U. S. 210, 6 Sup. Ct. 617, 710, 29 L. Ed. 860.

It should be here remarked that the church with which the testatrix was affiliated, and the religious and charitable work, if any, in which

she was interested and seeking to promote at the time of the execution of the codicil, do not appear from the record; nor, indeed, is there any evidence showing what her situation and surroundings were, except that she resided at Berachah Home, and had for some time. Nor does the record inform us how the fund is invested. We have, therefore, the evidence of no extrinsic facts and circumstances to aid us in ascertaining her meaning and intention.

[3] The words "I desire" are equivalent in meaning to the words "I direct," and should be so interpreted. The language used amounts to a declaration that the testatrix had previously invested in the "Lord's work," in care of Miss S. A. Lindenberger, the sum of $1,800, and to a direction that the fund should not be withdrawn upon her death, but should forever remain in that work.

[2] Her intention undoubtedly was, and we think her language may be thus interpreted, to devote the fund to religious and charitable uses and purposes; and, to that end, that it should remain in the possession of, and be administered by, Miss Lindenberger; or, in other words, that Miss Lindenberger should be the trustee of the fund. The provision should, therefore, be construed as an attempt to create a trust for religious and charitable uses and purposes. Being thus construed, does the provision amount to a gift in trust that is valid and enforceable? In my opinion it does not, for obvious reasons. The objects and purposes of the trust are not defined with sufficient particularity to enable the court, if called upon, to carry out the trust; and the beneficiaries are indefinite and uncertain. The fund is to remain and presumably be used in the "Lord's work," but how, or in what manner, or to what extent, is not specified.

The provision does not inform us whether the principal or interest or both shall be thus used. The phrase, "in the Lord's work," may be said to embrace all forms of religious and charitable work. Indeed, work that may be thus classified is so varied that one cannot even guess what particular kind of work the testatrix had in mind and intended to promote. It is manifestly necessary that a testator shall define his purpose and intention in making a trust sufficiently so that the court, at the instance of the Attorney General, representing the beneficiaries, can, by order, direct in carrying out the trust duty.

And it is also essential to the validity of every testamentary trust that there shall be a beneficiary either named or capable of being ascertained within the rules of law applicable in such cases. Read v. Williams, 125 N. Y. 560, 26 N. E. 730, 21 Am. St. Rep. 748; Fosdick v. Town of Hempstead, 125 N. Y. 581, 26 N. E. 801, 11 L. R. A. 715; People v. Powers, 147 N. Y. 104, 41 N. E. 432, 35 L. R. A. 502; Fairchild v. Edson, 154 N. Y. 199, 48 N. E. 541, 61 Am. St. Rep. 609.

The intention of the testatrix in founding the trust is not expressed; and, although the trustee selected by her may be presumed to be familiar with her purpose and design and to act upon such knowledge, her death would make it necessary for the court in which the title to the trust would vest to direct in regard to its control and disposition.

The statute already referred to (Laws of 1893, c. 701, as amended by Laws of 1901, c. 291) has rendered valid many gifts and bequests to religious, educational, charitable, and benevolent uses which prior

to its enactment would have been invalid by reason of indefiniteness; but the bequest here considered is not saved under its provisions.

In the last important case in the Court of Appeals involving the validity of a will including a trust for uncertain beneficiaries before the enactment of the statute (Tilden v. Green, 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487), the court say:

"The objection is not obviated by the creation of a power in the trustees to select a beneficiary, unless the class of persons in whose favor the power may be exercised has been designated by the testator with such certainty that the court can ascertain the object or objects of the power."

The act doubtless saves a trust from being invalid because the beneficiaries are indefinite and uncertain; but a trust may be so indefinite and uncertain in its objects and purposes, as distinguished from its beneficiaries, as to be impracticable if not impossible for the courts to administer. There must be some limitation upon the power of a testator to make a valid trust, if·he leaves his objects and purposes undefined and the beneficiaries indefinite and uncertain. Matter of Shattuck, 193 N. Y. 446, 86 N. E. 455. In this case, the residuary clause of a will in the following words was under consideration:

"All the rest, residue and remainder of my real and personal property, I give, devise, and bequeath to my executor hereinafter named, in trust; however, the rents, profits and income thereof to be expended by him annually and to be paid over to religious, educational, or eleemosynary institutions, as in his judgment shall seem advisable, not more than $500, however, to be paid to any one such institution in any one year."

In declaring this trust invalid the court (at page 451 of 193 N. Y., at page 456 of 86 N. E.) says:

"Religion is polemic. We have no established religion, and, as there is no guiding hand in the will to direct in the distribution of the testatrix's bounty, the personal views or religious faith of the Attorney General, representing the indefinite and uncertain beneficiaries, or of the judge holding the court for the time being, and from time to time, might affect the distribution to be made of the income of the trust fund. The distribution from time to time might thus be contradictory in its purposes and results. It would be possible also to have the bounty of a testator of uncompromising religious views distributed among institutions managed by those having entirely different and antagonistic views."

The cases of Bowman v. Domestic & Foreign M. Society, 182 N. Y. 494, 75 N. E. 535, and Manley v. Fiske, 66 Misc. Rep. 388, 123 N. Y. Supp. 129, on which counsel for the proponent relies, are not inconsistent with the views herein expressed. In each of those cases the charitable purpose to which the testator desired to apply the bequest was held to be sufficiently indicated to enable the Supreme Court, under the power derived from the statute, to administer the trust fund.

The decree to be entered herein admitting the will and codicil to probate should contain a provision declaring the fourth and fifth clauses of the will and the second clause of the codicil invalid.

Decreed accordingly.